UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID KISLENKO,

                    Plaintiff,

        v.

THE STANDARD FIRE INSURANCE
COMPANY,

                    Defendant.

CASE NO. 3:25-cv-05197-DGE

ORDER ON MOTION FOR
PARTIAL SUMMARY JUDGMENT
(DKT. NO. 18)

Before the Court is Defendant's motion for partial summary judgment.  (Dkt. No. 18.)

The Court has considered the pleadings filed in support of and in opposition to the motion and

the remainder of the record.  For the reasons set forth below, the Court DENIES Defendant's

motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2022, Plaintiff David Kislenko suffered injuries as the result of an

automobile collision in Vancouver, Washington.  (Dkt. No. 1-2 at 4.)  The collision involved

Kislenko and an individual named Austin Evans.  (*Id.*)  At the time of the collision, Plaintiff was

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 1

insured under a personal automobile policy issued by Defendant, The Standard Fire Insurance Company[1] ("Standard Fire"), which included $10,000 of Personal Injury Protection ("PIP") and Underinsured Motorist ("UIM") bodily injury coverage of $100,000 per person and $300,000 per accident. (Dkt. No. 20-2.) Evans was insured under a personal automobile policy issued by Allstate Fire and Casualty Insurance Company ("Allstate"), which carried a policy limit of $25,000. (Dkt. No. 23-1 at 1.)

On February 23, 2022, Plaintiff informed Standard Fire of the collision, opened a claim and stated he would be pursuing damages from Allstate, which accepted liability. (Dkt. No. 20-1 at 40.) On February 24, 2022, Plaintiff discussed his claim with an adjuster from Standard Fire and informed the insurer of injuries he suffered to his neck, back, and knees following the collision. (*Id.* at 39–40.) Plaintiff informed Standard Fire he was receiving care from a chiropractor three times a week. (*Id.* at 40.) On March 18, 2022, Standard Fire contacted Plaintiff, who confirmed he was still seeing a chiropractor three times a week, but also stated he was uncertain if his condition was improving. (*Id.* at 36.) On April 15, 2022, Standard Fire contacted Plaintiff's chiropractor to obtain information about his course of treatment. (*Id.*)

On May 10, 2022, Standard Fire contacted Plaintiff to discuss his condition and also sent a status request to Plaintiff's treatment provider. (*Id.* at 34–35.) The same day, Standard Fire requested an internal nurse review to determine whether Plaintiff's course of treatment was reasonable or if Plaintiff should undergo an Independent Medical Examination ("IME"). (*Id.*) The nurse who reviewed Plaintiff's claim recommended an IME to determine whether Plaintiff's

---

[1] Plaintiff's insurance policy was issued by Travelers. Standard Fire is a subsidiary of Travelers. In the interest of clarity and consistency, the Court will identify Defendant as Standard Fire throughout this order.

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 2

treatment was medical necessary and to ascertain if there was a causal relationship between the collision and Plaintiff's injuries. (*Id.* at 33–34.)

Paul Kendrick, D.C. conducted the IME on August 15, 2022. (Dkt. No. 20-4.) Kendrick's examination consisted of a clinical interview, a review of medical records, and a physical examination. (*Id.*) Based on his examination, Kendrick concluded Plaintiff's symptoms were caused by the collision but opined that no additional treatment would be reasonable or medically necessary to address the resulting injuries. (*Id.* at 9–10.) Kendrick stated that while Plaintiff had some residual pain complaints, his condition had improved between 70% and 75% and that further treatment would be of no benefit to him. (*Id.* at 10.) After receiving Kendrick's IME, Standard Fire informed Plaintiff it would not pay for additional chiropractic care, massage therapy, or physical therapy. (Dkt. No. 20-1 at 26–27.) On August 25, 2022, after receiving several questions from Plaintiff's counsel, Standard Fire sought an additional opinion from Kendrick. (*Id.* at 25.) Kendrick reviewed counsel's questions and confirmed his initial opinion. (Dkt. No. 20-5.)

On November 7, 2022, Plaintiff's counsel sent Standard Fire a letter from James Yanney, M.D., who began treating Plaintiff in August 2022. (Dkt. No. 23-7.) Dr. Yanney stated the automobile collision had caused "tremendous" acceleration/deceleration trauma to Plaintiff's head, neck, and temporomandibular joint ("TMJ") areas. (*Id.* at 4.) Dr. Yanney observed that while the pain in Plaintiff's neck, back, and shoulders had improved between 85% and 90% with treatment, Plaintiff continued to exhibit "significant restriction and dysfunction" of his TMJs bilaterally with inflammatory involuntary rebound pain to palpitation. (*Id.*) Dr. Yanney stated these symptoms were the result of a "specific bilateral internal derangement" visible on an MRI scan. (*Id.*) Dr. Yanney opined that in all medical probability, the automobile collision was the

cause of Plaintiff's TMJ symptoms. (*Id.* at 4–5.) Dr. Yanney listed several possible treatment options, but stated Plaintiff would probably need bilateral TMJ arthroplasties, performed under anesthesia, to correct the internal derangement and arrest the destructive inflammatory process. (*Id.* at 5.) After receiving Dr. Yanney's letter, Standard Fire paid Plaintiff's claim until he reached his PIP coverage limit. (Dkt. No. 20-1 at 21–23.)

On April 6, 2023, Allstate determined the value of Plaintiff's bodily injury claim was $25,000, the policy limit for Austin Evans' insurance. (Dkt. No. 23-8 at 1.) While Allstate tendered the full amount, Plaintiff asserts this was insufficient to make him whole. (Dkt. No. 23-1 at 1.) On April 14, 2023, Plaintiff's counsel sent Standard Fire a demand letter making a claim under Plaintiff's UIM coverage and notifying Standard Fire of its right to buy out Plaintiff's cause of action against Evans. (*Id.*) On May 4, 2023, Standard Fire's adjuster informed Plaintiff that she had completed her review of Plaintiff's UIM claim and determined that Plaintiff had been adequately compensated for his injuries. (Dkt. No. 23-9 at 3.) Standard Fire also informed Plaintiff it would not buy out his claim against Evans. (*Id.*) The adjuster proposed waiving 50% of Standard Fire's PIP subrogation "as a full and final compromised attempt" to resolve Plaintiff's claim. (*Id.*)

On May 8, 2023, Plaintiff's counsel asked Standard Fire to re-evaluate Plaintiff's UIM claim, citing Plaintiff's ongoing complaints of jaw pain and anxiety. (Dkt. No. 20-1 at 16–17.) Standard Fire maintained that its offer was fair and reasonable, but requested Plaintiff provide five years of medical records, including all records relating to a 2021 motor vehicle accident. (*Id.* at 16.) Plaintiff submitted medical records on May 19, 2023. (*Id.* at 15–16.) The same day, Standard Fire re-iterated its position that the $35,000 Plaintiff received from Standard Fire and Evans' insurance was sufficient to compensate him for his injuries. (*Id.* at 15.) Standard Fire

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 4

offered to waive 100% of Standard Fire's PIP subrogation "as a full and final attempt" to resolve the matter. (*Id.*) On June 21, 2023, after considering Plaintiff's medical records, Standard Fire assessed the cost of Plaintiff's TMJ injury and treatment to be between $6,000 and $9,000. (*Id.* at 13–14.) Standard Fire nevertheless found the total value of Plaintiff's claim to be less than the $35,000 he had already received and therefore re-stated its position that Plaintiff had been fully compensated for his injuries. (*Id.*)

On July 26, 2023, Standard Fire informed Plaintiff it was accepting $15,182 in special damages and general damages up to $19,000. (*Id.* at 12.) Standard Fire placed a total value of $34,128 on Plaintiff's claim, minus the $35,000 he had already received, meaning the value of Plaintiff's claim was -$818. (*Id.* at 11.) On October 1, 2023, Plaintiff's counsel contacted Standard Fire to express his concern that the insurer was still "lowballing" Plaintiff. (*Id.*) Plaintiff's counsel attached a declaration from Dr. Yanney dated September 26, 2023. (Dkt. No. 23-2.) Dr. Yanney provided a summary of Plaintiff's jaw treatment and opined that Plaintiff would need surgical intervention "in the near future" to restore his range of motion and arrest the destruction of his joints, otherwise he would have to live with his jaw pain "for the rest of his life." (*Id.* at 7–8.) Standard Fire's adjuster reviewed Dr. Yanney's declaration, but did not change her assessment of Plaintiff's claim. (Dkt. No. 20-1 at 10.)

On October 10, 2023, after further communication with Plaintiff's counsel, Standard Fire's adjuster requested additional dental and medical records. (*Id.* at 8–9.) On October 18, 2023, Standard Fire re-iterated its request for additional information. (*Id.* at 6–7.) On March 28, 2024, Standard Fire contacted Plaintiff's counsel to follow up after not receiving the requested records. (*Id.* at 5.) Standard Fire contacted Plaintiff's counsel again in June and September of 2024. (*Id.* at 4–5.) On October 8, 2024, Standard Fire closed Plaintiff's claim. (*Id.* at 3.)

On October 15, 2024, Plaintiff's counsel sent an Insurance Fair Conduct Act ("IFCA") claim notification to the Washington State Office of the Insurance Commissioner.  (Dkt. Nos. 20-1 at 2; 23-13.)  On February 10, 2025, Plaintiff filed a complaint against Standard Fire in the Clark County Superior Court.  (Dkt. No. 1-2.)  Plaintiff asserted causes of action for: (1) Breach of Contract; (2) Violation of IFCA; (3) Violation of the Consumer Protection Act ("CPA"); (4) Violation of the Duty of Good Faith; and (5) Negligent Claim Handling.  (*Id.* at 7–10.)  On March 11, 2025, Standard Fire removed this case to federal court.  (Dkt. No. 1.)

On February 19, 2026, Standard Fire filed a motion for partial summary judgment.  (Dkt. No. 18.)  Standard Fire asks the Court to grant summary judgment in its favor with respect to Plaintiff's Good Faith, CPA, and IFCA claims.  (*Id.*)  On March 12, 2026, Plaintiff filed a response.  (Dkt. No. 22.)  On March 19, 2026, Standard Fire replied.  (Dkt. No. 24.)

## II.    LEGAL STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 6

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—in most civil cases, a preponderance of the evidence. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv. Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv. Inc.*, 809 F.2d at 630 (relying on *Anderson*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888–889 (1990).

### III.    DISCUSSION

#### A.  Bad Faith Claim

An action for bad faith handling of an insurance claim sounds in tort. *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992). "Claims of insurer bad faith 'are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty.'" *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 169 P.3d 1, 8 (Wash. 2007). "In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mount Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998).

"When the insurer defends its insured under a reservation of rights, an insurer need not put the insured's interests above his own but the insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests." *Petersen-Gonzalez v. Garcia*, 86 P.3d 210, 214 (Wash. Ct. App. 2004) (internal citation and quotation marks omitted). Because the relationship between a UIM insurer and its insured is adversarial, this "enhanced obligation" does not apply. *Id.* Nevertheless, there remains a duty of good faith and fair dealing, and "the insured has a reasonable expectation that he will be dealt with fairly and in good faith by his insurer." *Id.* (internal citation and quotation marks omitted). "The UIM insurer 'stands in the shoes' of the tortfeasor in that the liability to the insured is identical to the tortfeasor's liability up to the UIM policy limits." *Id.* at 216. "UIM coverage requires that a UIM insurer be free to be adversarial within the confines of the normal rules of procedure and ethics." *Id.*

Standard Fire argues it has acted within the boundaries of normal rules of procedure and ethics and acted reasonably in handling Plaintiff's claim, staying in regular contact with Plaintiff's counsel and working in good faith to investigate and resolve Plaintiff's claim. (Dkt. No. 18 at 18–22.) Standard Fire argues it never actually denied coverage and asserts it is entitled to assert the same defenses as the tortfeasor, such as disputing the value of Plaintiff's claims. (*Id.* at 21.)

Plaintiff argues there is a wealth of evidence that Standard Fire did not conduct a reasonable investigation into his claim and therefore breached its duty of good faith. (Dkt. No. 22 at 18–27.) "Whether an insurer acted in bad faith is a question of fact." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003). An insurer is entitled to summary judgment on a policyholder's bad faith claim "only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 8

entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party." *Id.* "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Id.* at 1277.

Here, Plaintiff cites several acts on the part of Standard Fire that allegedly demonstrate the insurance company acted in bad faith. Plaintiff argues Standard Fire relied on the results of the IME to terminate his PIP benefits, despite the fact that the chiropractor who conducted IME did not evaluate Plaintiff's jaw injury. (Dkt. No. 22 at 20.) Plaintiff argues more broadly that Standard Fire cut off Plaintiff's PIP benefits despite conducting "absolutely no review" of Plaintiff's jaw injury.[2] (*Id.*)

Plaintiff asserts Standard Fire made its first "measly" offer to resolve his UIM claim "without obtaining a specialist review of the jaw injury, conducting an IME addressing the TMJ condition, or otherwise investigating the nature and severity of the injury reflected throughout the medical records." (*Id.* at 20–21.) Plaintiff argues Standard Fire's adjuster discounted Dr. Yanney's opinion out of hand, requested Plaintiff's dental records despite there being no evidence of a prior jaw injury and refused to pay Plaintiff's claim despite receiving five years of chiropractic records showing no indication of any prior TMJ injury. (*Id.* at 21.) Plaintiff further contends Standard Fire did not consult a dental expert until after Plaintiff initiated this action.

---

[2] Standard Fire argues Plaintiff is improperly attempting to conflate his PIP coverage with his UIM coverage to establish that Standard Fire unreasonably investigated Plaintiff's UIM claim. (Dkt. No. 24 at 1.) Standard Fire contends PIP and UIM are distinct coverages with their own investigative standards, and that Standard Fire's handling of Plaintiff's PIP claim is not before the Court because Plaintiff exhausted his PIP benefits in 2022. (*Id.* at 4.) The Court acknowledges that PIP and UIM are distinct coverages, but some of the medical evidence relevant to Plaintiff's UIM claim, for example Dr. Yanney's opinion, was submitted to Standard Fire while Plaintiff's PIP claim was still pending.

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 9

(*Id.* at 21–22.)  Plaintiff argues each instance of Standard Fire's failure to investigate his claim independently creates a question of fact.  (*Id.* at 22.)

"Important factors to determine whether an investigation was reasonable include whether the investigation was thorough and whether the insurer consulted qualified experts."  *Gamble v. State Farm Mut. Auto. Ins. Co.*, Case No. C19-5956 RJB, 2020 WL 6286816, at *3 (W.D. Wash. Oct. 27, 2020).  Here, the Court finds there is a genuine issue of material fact concerning whether Standard Fire acted in bad faith by failing to conduct a reasonable investigation.  Reasonable minds could reach different conclusions concerning, for example, whether Standard Fire acted reasonably by not consulting a specialist regarding the extent of Plaintiff's jaw injury, particularly after receiving Dr. Yanney's opinions that Plaintiff would likely require surgery to address his condition.

Standard Fire argues Plaintiff cannot establish damages for purposes of his bad faith claim.  Standard Fire cites Plaintiff's response to an interrogatory submitted by Standard Fire asking what damages Plaintiff suffered "as a result of action on the part of Standard Fire."  (Dkt. No. 19-1 at 22–25.)  Standard Fire argues the injuries Plaintiff alleges "relate[] to the residuals of the Subject Accident itself, rather than any action or inaction on behalf of Standard Fire."  (Dkt. No. 18 at 10.)

Plaintiff argues he suffered damages proximately caused by Standard Fire's bad faith handling of his claim.  (Dkt. No. 22 at 26–27.)  Plaintiff cites his deposition testimony, during which he stated he had worsening stress and anxiety stemming from Standard Fire's refusal to pay his claim.  (Dkt. No. 23-14 at 7–8.)  Plaintiff claimed he felt "betrayed" and "cheated" by Standard Fire's refusal to pay his UIM claim, which he believed should have been covered by his policy.  (*Id.* at 11.)  Insurance bad faith claims require that the damages alleged "be proximately

caused by the insurer's bad-faith actions." *Beasley v. GEICO General Ins. Co.*, 517 P.3d 500, 517 (Wash. Ct. App. 2022). Insurance bad faith claims allow for recovery of expenses, consequential damages, and "general tort damages," including noneconomic damages "such as emotional distress caused by the breach of the duty of good faith." *Id.* at 514.

Plaintiff can recover damages for emotional distress allegedly caused by Standard Fire's bad faith handling of Plaintiff's claim. Moreover, Plaintiff can rely "exclusively on his or her own testimony to establish emotional distress in a bad-faith insurance case." *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp. 2d 1181, 1196 (W.D. Wash. 2009), citing *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 467–468 (Wash. 2007). As such, the question of whether Plaintiff's damages were proximately caused by Standard Fire's conduct is for the jury.

Accordingly, Standard Fire's motion for summary judgment with respect to Plaintiff's bad faith claim is DENIED.

**B. CPA Claim**

To succeed on a claim under the CPA, a plaintiff must prove: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009).

"A per se unfair trade practice exists when a statute which has been declared by the [Washington] Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). In Washington, the legislature has expressly declared that the insurance business is one "affected by the public interest" and has prohibited insurers "from engaging in unfair or deceptive acts as defined by the legislature or the insurance commissioner." *Peoples v. United*

*Servs. Auto. Ass'n*, 452 P.3d 1218, 1222 (Wash. 2019). "It is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations." *Id.* at 1221.

Here, Plaintiff's complaint alleges Standard Fire engaged in an unfair or deceptive practice by violating Washington insurance regulations. (Dkt. No. 1-2 at 9.) Plaintiff alleges Standard Fire violated Washington Administrative Code § 284-30-330, which provides, among other things,[3] that refusal to pay claims without conducting a reasonable investigation constitutes an unfair or deceptive practice. *See American Mfg. Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1234 (Wash. Ct. App. 2001) (an insured may establish an unfair or deceptive act or practice "by showing a violation of any subsection of WAC 284-30-330.")

Standard Fire argues Plaintiff cannot establish that Standard Fire engaged in any unfair or deceptive practice in connection with Plaintiff's claim. (Dkt. No. 18 at 23.) Standard Fire further argues that Plaintiff cannot establish that any deceptive act on the part of Standard Fire caused his injuries. (Dkt. No. 18 at 24–26.) Standard Fire re-asserts its argument that Plaintiff's alleged injuries were the result of the automobile accident, and that to the extent Plaintiff alleges emotional injuries stemming from the insurer's decision not to pay his UIM claim, Plaintiff may not recover for such an injury under the CPA because he is not alleging an injury to his business or property. (*Id.*)

Plaintiff argues he did suffer an injury to his business or property, as required to meet the fourth element of a CPA claim. (Dkt. No. 22 at 28.) Plaintiff acknowledges that the CPA's requirement that injury be to business or property excludes personal injury, "mental distress,

---

[3] Plaintiff alleges Standard Fire violated several other subsections of Washington Administrative Code § 284-30-330. (Dkt. No. 22 at 25–26.)

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 18) - 12

embarrassment, and inconvenience." *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014) (internal citation omitted).  However, Plaintiff argues he does not seek damages for emotional distress in connection with his CPA claim, but rather seeks $100,000 in UIM benefits to which he was entitled under his policy.  (Dkt. No. 22 at 28.)  "[T]he deprivation of contracted-for insurance benefits is an injury to business or property regardless of the type of benefits secured by the policy." *Peoples*, 452 P.3d at 1222; *see also Gaekwar v. Amica Mut. Ins. Co.*, Case No. 2:22-CV-1551-BJR, 2024 WL 69620, at *2 (W.D. Wash. Jan. 6, 2024) (collecting cases and finding that insureds may maintain CPA claims against insurers in the context of UIM coverage).

Plaintiff may assert a CPA claim for deprivation of UIM benefits, which constitutes an injury to business or property for purposes of the CPA.  Further, as discussed above, there remains a question of fact concerning whether Standard Fire breached its duty of good faith by failing to conduct a reasonable investigation into Plaintiff's claim.  Accordingly, Standard Fire's motion for summary judgment as to Plaintiff's CPA claim is DENIED.

**C. IFCA Claim**

To state a claim under IFCA, the insured must show that the insurer "unreasonably denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits." *Perez-Crisantos v. State Farm Fire and Casualty Co.*, 187 Wash. 2d 669, 683 (Wash. 2017) (internal citations omitted).

Plaintiff argues Standard Fire unreasonably denied payment of benefits by presenting Plaintiff with several paltry "non-offers" to resolve Plaintiff's UIM claim.  (Dkt. No. 22 at 29.) Standard Fire argues it never denied coverage or benefits, and that Plaintiff's claim "was merely a value dispute."  (Dkt. No. 18 at 26–27.)  Standard Fire contends it acted reasonably in

investigating Plaintiff's claim and determining he was fully compensated for his injuries. (*Id.* at 27–28.) Finally, Standard Fire argues Plaintiff cannot establish any actual damages proximately caused by an unreasonable denial. (*Id.* at 28.)

The fact that Standard Fire did not deny Plaintiff's UIM claim "does not end the analysis." *Morella v. Safeco Ins. Co. of Illinois*, Case No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013). For purposes of IFCA, "[w]here the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, . . . the benefits promised in the policy are effectively denied." *Id.* Whether Standard Fire's denial of payment was based on "a reasoned evaluation of the facts" (*see id.*) is a question of fact for the jury. Further, Plaintiff has alleged "actual damages" stemming from Standard Fire's decision to deny payment, namely $100,000 in UIM benefits. *See Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, Case No. C11-1587RAJ, 2012 WL 6677766, at *9 (W.D. Wash. Dec. 21, 2012) (noting that for purposes of IFCA, "actual damages sustained from an unreasonable denial of benefits necessarily include . . . the benefits that were unreasonably denied."). Accordingly, Standard Fire's motion for summary judgment as to Plaintiff's IFCA claim is DENIED.

## IV.   ORDER

For the reasons stated herein, Standard Fire's motion for partial summary judgment (Dkt. No. 18) is DENIED.

Dated this 29th day of April, 2026.



David G. Estudillo
United States District Judge